In re CULT AWARENESS NETWORK, INC., Debtor.

CULT AWARENESS NETWORK, INC., Debtor–Appellant,

and

John M. Beal, Hagenbaugh & Murphy, and Davis Wright Tremaine, Creditors–Appellants,

v.

Philip V. MARTINO, Trustee–Appellee,

and

Steven L. Hayes, a law corporation, Intervenor–Appellee.

No. 97–3002.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1998.

Decided July 30, 1998.

John M. Beal, Chicago, IL, for John M. Beal.

Daniel A. Leipold, Hagenbaugh & Murphy, Orange, CA, for Hagenbaugh & Murphy.

Mary E. Steele, Davis Wright Tremaine, Seattle, WA, for Davis Wright Tremiane.

Philip V. Martino (argued), Elizabeth A. Graber, Rudnick & Wolfe, Chicago, IL, for Philip V. Martino.

Roman Sukley, Stephen G. Wolfe, Officew of the United States Trustee, Chicago, IL, for U.S. Trustee.

Steven Hayes (argued), Bowles & Hayes, Los Angeles, CA, for Steven Hayes.

David J. Bardin (argued), Arent, Fox, Kintner, Plotkin & Kahn, Milton J. Grossman, Washington, DC, for Cult Awareness Network.

Before MANION, KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

The Cult Awareness Network, Inc., a non-profit corporation in the midst of bankruptcy, wants to object to the trustee's sale of its trade name to a purchaser who it believes will use the name to promote cults. We hold that the Cult Awareness Network lacks standing to object because it has no pecuniary interest in the disposal of its estate.

## I. HISTORY

The Cult Awareness Network is a nonprofit corporation which engages in public information, anti-cult advocacy, and cult-victim support. Because of extreme litigation costs and adverse legal judgments against it, the Cult Awareness Network filed for reorganization under Chapter 11 of the bankruptcy code. After unsuccessfully proposing a few plans for reorganization, the Cult Awareness Network converted its bankruptcy to a liquidation proceeding under Chapter 7. The creditors in this appeal are John M. Beal, Hagenbaugh & Murphy, and Davis Wright Tremaine ("creditors").

Philip V. Martino is the elected Chapter 7 Trustee in Bankruptcy ("Trustee"). After giving notice of the sale, the Trustee, the Cult Awareness Network, and the creditors discussed in open court exactly what assets were for sale. The assets were mostly office furniture and supplies and computer hardware, but they also included the Cult Awareness Network's trademarks, trade name, and service marks. They did not include the Cult Awareness Network's mailing lists, telephone records, financial records, folders on cults, or other such information that the Trustee deemed confidential. The bankruptcy court authorized the Trustee to auction the assets, which he did. The Trustee sold these assets as a lot without representation or warranty.

There were two bidders at the auction. Steven L. Hayes cast the highest bid at $20,000. The unsuccessful bidder, Cynthia Kisser, was the executive director of the Cult Awareness Network. The Trustee himself described this auction as between the "cults" and the "anti-cults."

The Trustee successfully moved for confirmation of the sale. Hayes took possession of the tangible assets a week later. The Cult Awareness Network believes that Hayes is affiliated with the Church of Scientology, an organization not in complete harmony with the beliefs of the Cult Awareness Network.

A few days later, the Cult Awareness Network filed objections to the sale, complaining in part that its trade name had been sold in gross, or separate from the attending good will. After a hearing, the bankruptcy court ruled that the Cult Awareness Network had no standing to object because it lacked a pecuniary interest in the outcome of the sale.

The Cult Awareness Network appealed to the district court. That court affirmed, agreeing with the bankruptcy court that the Cult Awareness Network lacked standing because it has no pecuniary interest in the outcome of the sale.

## II. ANALYSIS

■ On an appeal from a district court's decision to affirm a bankruptcy court order, we use the same standard of review as the district court. We review findings of fact for clear error and legal conclusions *de novo.* *See Kravit, Gass & Weber, S.C. v. Michel (In re Crivello),* 134 F.3d 831, 835 (7th Cir.1998); *see also* Fed. R. Bankr.P. 8013.

### A. *Debtor's Standing*

■ Bankruptcy standing is narrower than Article III standing. *Compare Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (describing Article III standing) *with In re Andreuccetti,* 975 F.2d 413, 416 (7th Cir.1992) (describing bankruptcy standing). To have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order. *See Andreuccetti,* 975 F.2d at 416. Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor. *See In re Schultz Mfg. Fabricating Co.,* 956 F.2d 686, 692 (7th Cir. 1992).

The Cult Awareness Network's first argument is that the standard rule is broad enough to include more than just pecuniary interests. The Cult Awareness Network relies on language from *In re DuPage Boiler Works, Inc.*, 965 F.2d 296 (7th Cir.1992). In that case, we said that a person has standing to object to an order if that person can "demonstrate that the order diminishes the person's property, increases the person's burdens, or impairs the person's rights." *Id.* at 297. The Cult Awareness Network argues that such language permits nonpecuniary interests to support bankruptcy standing. Read in context, however, the rule articulated in *DuPage Boiler Works* is not broader than the rule as stated in *Andreuccetti.* Despite a slightly different wording of the rule, the interest at issue in *DuPage Boiler Works* was pecuniary (the amount of the appellant's criminal restitution obligation). *See id.* We applied the same substantive rule in *DuPage Boiler Works* as we did in *Andreuccetti.* The pecuniary interest rule is certainly the rule of this Circuit.

■ There is an established "exception" to the rule that debtors do not have standing to object to bankruptcy orders, which is not so much an exception as a careful application of the pecuniary interest rule itself. Occasionally a debtor might be able to satisfy all debts with the assets from the estate and be left with some amount remaining. If the debtor can show a reasonable possibility of a surplus after satisfying all debts, then the debtor has shown a pecuniary interest and has standing to object to a bankruptcy order. *See Andreuccetti*, 975 F.2d at 417.

■ The Cult Awareness Network argues that it has shown the reasonable possibility of a surplus in the estate. But the bankruptcy court found as a fact that the possibility of a surplus was "too remote to support standing as a party in interest." Tr. at 3, *In re Cult Awareness Network*, 205 B.R. 575 (Bankr.N.D.Ill. 1997). The district court reviewed this finding and found no clear error;

neither do we. The Cult Awareness Network's debts far outweigh its assets. To tip this balance, the Cult Awareness Network needed a reversal by the Ninth Circuit of a judgment against it, *Scott v. Ross*, 140 F.3d 1275 (9th Cir.1998). The Ninth Circuit did not reverse; it affirmed the judgment of more than $1,000,000 against the Cult Awareness Network. The Cult Awareness Network also needed a reversal by the Illinois Supreme Court in a case the Cult Awareness Network is prosecuting against the Church of Scientology. The Cult Awareness Network got this reversal, but the battle is far from over. *See Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill.2d 267, 226 Ill.Dec. 604, 685 N.E.2d 1347 (1997). The Cult Awareness Network must now return to the trial court to win a very large award against the Church of Scientology to have any chance at a surplus. This litigation could take years, and there is no certainty that the Cult Awareness Network will prevail and be awarded a large judgment. It is even less certain that the Cult Awareness Network could collect this judgment, pay its litigation costs and attorneys' fees, and have anything left over. We agree with the bankruptcy court that a potential judgment in this case is not the kind of reasonable possibility of a surplus of assets that gives a debtor standing under Andreucetti. The bankruptcy court's finding is not clearly erroneous.

■ The Cult Awareness Network proposes two new exceptions to the rule that a debtor must have a pecuniary interest to have standing to object to a bankruptcy order: A debtor has standing to object when the trustee proposes to sell the debtor's trade name in violation of the Lanham Act,[1] and a debtor has standing to object when the trustee does something to violate the debtor's First Amendment associational rights. We decline to endorse these exceptions to the pecuniary interest rule. We address spe-

---

1. The trustee apparently sold the Cult Awareness Network's trade name without selling the appurtenant good will. The trade name means nothing without the underlying content that can be conveyed only by selling the good will. *See* 15 U.S.C. § 1060. The sale of a trade name without

good will is a nullity. *See Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359 (7th Cir. 1993). We express no opinion on the validity of the sale here or on the current ownership of the trade name because the question was not addressed specifically in the courts below.

cifically the Cult Awareness Network's arguments regarding the Lanham Act. The Cult Awareness Network's arguments regarding the First Amendment are extremely tenuous, and we will not address them separately. The Cult Awareness Network's First Amendment claim fails for the same reason its Lanham Act claim fails.

The Cult Awareness Network relies on the fact that bankruptcies do not occur in a vacuum; the bankruptcy courts and participants must obey nonbankruptcy law, state and federal, while they conduct the bankruptcy proceedings. *See Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 502, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). In *Midlantic*, the debtor filed for bankruptcy, and the trustee decided that the most economical course was simply to abandon the debtor's property. *See id.* at 497, 106 S.Ct. 755. However, the debtor's property was dangerous and contaminated. State and federal law required the owner of such property to take some precautions to prevent injury to the public. *See id.* at 498–500, 106 S.Ct. 755. The Supreme Court held that the trustee could not ignore laws meant to protect the public while disposing of the estate. *See id.* at 507, 106 S.Ct. 755. Read broadly, *Midlantic* stands for the proposition that bankruptcy actors cannot ignore non-bankruptcy law. However, *Midlantic* was not a case about standing. The question in our case is not whether the trustee may or may not violate the Lanham Act when disposing of the estate. The question is whether the Cult Awareness Network—the debtor—has standing to object to an order concerning the disposition of the estate. For that reason, *Midlantic* is interesting but not dispositive.

The purpose of the pecuniary interest rule "is to insure 'that bankruptcy proceedings are not unreasonably delayed by protracted litigation by allowing only those persons whose interests are directly affected by a bankruptcy order to appeal.'" *Andreuccetti*, 975 F.2d at 416–17 (quoting *DuPage Boiler Works*, 965 F.2d at 297). If we except the Cult Awareness Network from the pecuniary interest rule, it is unforeseeable how many other exceptions would have to be made for

other debtors with substantial but nonpecuniary interests. We see no logical reason to make an exception for a debtor with a Lanham Act interest and not a debtor with an antitrust concern, or an environmental concern, or any one of countless other important but nonpecuniary concerns. Our bankruptcy system works because it processes debtors and their creditors in, we hope, an expeditious manner. Making exceptions would complicate the process unnecessarily. As the Fourth Circuit stated:

> Courts consistently have noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved primarily by narrowly defining who has standing in a bankruptcy proceeding.

*Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654, 656–57 (4th Cir. 1997); *see also* Fed. R. Bankr.P. 1001 ("These [bankruptcy] rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (Bankruptcy courts are intended to "deal efficiently and expeditiously" with the estate.) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

This proceeding was a Chapter 7 liquidation. The case began as a Chapter 11 reorganization, but the Cult Awareness Network voluntarily chose to convert to a Chapter 7 liquidation instead. In fact, the Cult Awareness Network, a nonprofit corporation, could not be forced to convert to a Chapter 7 liquidation. *See* 11 U.S.C. § 1112(c). When the Cult Awareness Network chose to avail itself of Chapter 7 liquidation in order to have its (very substantial) debts forgiven, it forewent any realistic opportunity to control the disposition of the estate.

We are mindful that this is an emotionally charged case for the Cult Awareness Network. The name Cult Awareness Network has been sold to what that organization believes is a cult. The Cult Awareness Network suspects that the name will be put to misleading and unscrupulous purposes. That

problem will be addressed, when and if it arises, by aggrieved consumers, by the Cult Awareness Network's board of directors (The Cult Awareness Network, Inc. still exists as a California corporation, as near as the record shows.), or perhaps by state or federal authorities, but not in this bankruptcy proceeding. We do not foreclose the possibility of future legal action on this topic. We hold only that the Cult Awareness Network lacks standing in this proceeding to object to the sale because it has no pecuniary interest in the outcome.

The Cult Awareness Network also claims that the disposition of its estate denied it due process. We reject this argument as without merit.

### B. Creditors' Standing

The Cult Awareness Network's creditors also want to object to the sale. The creditors have standing to object to the bankruptcy order. After all, they are the creditors and the recipients of the proceeds of the estate. They have a pecuniary stake in the manner in which the estate is liquidated. However, they waived any objection by not raising it to the bankruptcy court in a timely manner. They had notice of the sale, yet they did not object. Their arguments are waived. *See In re Bero*, 110 F.3d 462, 466 (7th Cir.1997).

The decision of the district court is AFFIRMED.